**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **KEITH ALEXANDER ASHE** | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil No. **PJM 16-3423** |
| | * | |
| **TOM PRICE, SECRETARY OF** | * | |
| **HEALTH AND HUMAN SERVICES** | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

*Pro se* Plaintiff Keith Alexander Ashe has sued Defendant Tom Price, Secretary of Health and Human Services.[1] In his Complaint (ECF No. 1), Ashe alleges that he was retaliated against after making whistleblower disclosures. He brings claims under the Whistleblower Protection Act and the Whistleblower Protection Enhancement Act of 2012 (collectively the "WPA"), as well as Title VII of the Civil Rights Act of 1964 ("Title VII"). Defendant has filed a Motion to Dismiss (ECF No. 15), arguing that the Court lacks subject matter jurisdiction over Ashe's claims.

For the following reasons, the Court will **GRANT WITH PREJUDICE** Defendant's Motion to Dismiss (ECF No. 15).

---

[1] This case was originally docketed as *Ashe v. Burwell*. Sylvia M. Burwell served as United States Secretary of Health and Human Services until January 20, 2017. On February 10, 2017, Tom Price was sworn into that office. As indicated in the accompanying Order, Tom Price will be substituted for Sylvia M. Burwell as Defendant.

## I.   FACTS AND PROCEDURAL HISTORY

Ashe began his employment at the National Institutes of Health ("NIH") on approximately October 27, 2007 and worked there until February 28, 2017.[2] Compl. at 5, ECF No. 1; Response in Opposition at 2, ECF No. 17. He served as a Safety Engineering Activity Program Manager in the Office of Research Services ("ORS"), and until February 2015, functioned as a Contracting Officer Representative on an NIH contract related to biosafety laboratories. Def's. Mot. to Dismiss at 1, ECF No. 15. Until his recent termination, Ashe was supervised by Dr. Deborah E. Wilson, U.S. Public Health Service, Director of the Division of Occupational Health and Safety in the ORS at NIH. Mot. to Dismiss at 1, 5.

Ashe states that on April 18, 2013, he disclosed to Dr. Alfred Johnson, Director of ORS, that his supervisor, Wilson had "asked him to fabricate a[n] engineering regulatory report." Compl. at 3. He also says that in February 2015, he disclosed to Johnson, Wilson, NIH Deputy Director Herbert Jacobi, and "his contracting officers," that a government contractor was "committing contract fraud." Compl. at 4.

Ashe avers that as a consequence of the foregoing disclosures, he was retaliated against in several ways:

- On April 30, 2013, NIH ordered a psychiatric evaluation of him. Compl. at 6.
- Unsupported comments in his 2014 performance review stated that he had been uncooperative with staff and contractors. Compl. at 6-7.
- On February 23, 2015, Wilson and others discussed filing a workplace harassment claim against him, constituting a threat that they would conduct an investigation. Compl. at 8.

---

[2] Although Ashe still worked at NIH as of the date of his Complaint, he has since indicated that he was removed from Federal government service on February 28, 2017. Response in Opposition at 2, ECF No. 17.

Moreover, Ashe was investigated in a CIVIL workplace harassment and violence investigation. Compl. at 8.

- He was moved from a walled office to a cubicle despite the availability of other walled offices. Compl. at 8.

- He was placed on Special Leave Procedures despite not having an opportunity to meet with his supervisor and a human resources representative beforehand. Compl. at 8-9.

- He received a level 2 rating (out of 5) in his 2015 performance review. Compl. at 9.

- On June 8, 2016, he received an Official Reprimand. Compl. at 10.

- On June 21 and July 6, 2016, he was asked to sign a mandatory privacy addendum to his 2016 performance review. Compl. at 10.

- On August 2, 2016, he was instructed to perform work from his office location as opposed to the remote office on NIH property where he felt more comfortable. Compl. at 10.

- He was instructed to post his whereabouts on the division's shared calendar. Compl. at 11.

- Human Resources failed to act after he made allegations of a hostile work environment on August 29, 2016. Compl. at 11.

- On October 6, 2016, he was issued a proposal to suspend him for fourteen days. Compl. at 11.

Prior to filing his Complaint, Ashe filed a report with the Office of Special Counsel ("OSC") on January 27, 2016.[3] Compl. at 1. He was informed by the OSC that it would not

---

[3] In his OSC complaint, Ashe alleged that he was retaliated against for making protected disclosures when: (1) NIH conducted a CIVIL workplace harassment investigation into him after receiving complaints from contracting staff; (2) during the investigation, his duties were reassigned and

investigate his claims. *Id.* He then filed an Individual Right of Appeal with the U.S. Merit Systems Protection Board ("MSPB") on May 31, 2016.[4] *Id.* The MSPB Administrative Judge issued an Acknowledgement Order on June 7, 2016, but as of the date of his Complaint, no judicially reviewable action as issued by the MSPB. *Id.*[5] The Government explains that the parties have engaged in discovery in the course of the MSPB appeal, and both Ashe and NIH have filed numerous motions, including motions to dismiss, compel discovery, for sanctions, and for summary judgment. Motion to Dismiss at 4. On March 2, 2017, the Administrative Judge ruled on all outstanding motions, ordered that the record be closed on April 21, 2017, and established a deadline for filing initial briefs of March 31, 2017. Order Closing the Record, Motion to Dismiss, Exhibit 6, ECF No. 15-7.

Ashe filed the present Complaint on October 12, 2016, asserting WPA and Title VII violations. Ashe alleges that as a consequence of his "whistleblower disclosures," he "was retaliated against and subjected to an extremely hostile work environment." Compl. at 1. He contends that there is a "clear chain of causality link[ing] [his] whistleblower disclosures and NIH's retaliatory actions" and that "the myriad of action taken against [him] . . . form a

---

responsibilities were stripped, including being removed from his role as Safety Engineering Activity Branch Chief; (3) he was moved to a different office; (4) he was issued a warning letter; (5) his time and leave were scrutinized resulting in a Special Leave Procedures Memorandum; and (6) his name was not included on a list of division employees. OSC Compl. Case No. MA-16-1720, Motion to Dismiss, Exhibit 2, ECF No. 15-3; OSC Compl., Case No. DI-16-1734, Motion to Dismiss, Exhibit 3, ECF No. 15-4.

[4] In addition to the claims raised in his OSC complaint, Ashe's MSPB appeal also alleged that in retaliation for his protected disclosures: (1) NIH subjected him to psychiatric evaluations; (2) he received negative comments in his 2014 performance review, and (3) he received a low rating on his 2015 performance review. MSPB Appeal, Motion to Dismiss, Exhibit 5, ECF No. 15-6.

The Government recounts that on November 8, 2016 (after the filing of this action), Ashe also filed a formal complaint of discrimination with NIH's Office of Equity, Diversity and Inclusion, in which he claims that he was discriminated against based on many of the same allegations he makes in this case. Motion to Dismiss at 3. That complaint is currently under investigation. *Id.*

[5] In his Complaint, Ashe states, "[n]o judicially reviewable action was issued by the MSPB." Compl. at 2.

4

convincing 'mosaic' demonstrating that he was retaliated against for making whistleblower disclosures." Compl. at 2.

On March 6, 2017, the Government filed a Motion to Dismiss (ECF No. 15), arguing that Ashe's Complaint should be dismissed because Ashe's attempt to seek judicial review of administrative action is premature and was filed in the wrong court.[6] Ashe filed a response on March 8, 2017, and the Government replied on March 23, 2017.

## II. STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted if the allegations in a complaint do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). But this standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court will accept factual allegations as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Indeed, the court need not accept legal conclusions couched as factual allegations or "unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). In the end, the complaint must contain factual allegations sufficient to apprise a defendant

---

[6] On February 7, 2017, prior to the Government's Motion to Dismiss being filed, Ashe filed a Motion for Summary Judgment (ECF No. 11). On February 12, 2017, the Government moved to stay briefing, consideration, and resolution of Ashe's Motion for Summary Judgment, asking that the Court defer ruling on Ashe's Motion for Summary Judgement until after the resolution the Government's then-forthcoming motion to dismiss. The Court granted the Motion to Stay on February 22, 2017. ECF No.14.

of "what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).

A party may move for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) where the court lacks subject matter jurisdiction over the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited subject matter jurisdiction: they "possess only the jurisdiction authorized them by the United States Constitution and by federal statute." *See United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Bowles v. Russell*, 551 U.S. 205, 127 S. Ct. 2360, 2365, 168 L.Ed.2d 96 (2007)). As the party asserting jurisdiction, the plaintiff bears the burden of proving that the district court has subject matter jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). When a district court determines that it lacks subject matter jurisdiction over an action, it must dismiss the action. *Vuyyuru*, 555 F.3d at 347 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506-07, 126 S. Ct. 1235, 163 L.Ed.2d 1097 (2006)). In considering whether to dismiss for lack of jurisdiction, the court may consider "evidence outside of the pleadings without converting the proceeding into one for summary judgment." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (quoting *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768); *see also Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) ("[T]he court may consider the evidence beyond the scope of the pleadings to resolve factual disputes concerning [subject matter] jurisdiction.").

## II.     ANALYSIS

As an initial matter, Ashe has failed to state a claim under Title VII upon which relief might be granted. "The elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment

action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom.* Coleman v. Court of Appeals of Maryland, 566 U.S. 30, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012). "Title VII forbids employment discrimination based on 'race, color, religion, sex, or national origin.'" *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015) (quoting 42 U.S.C. § 2000e–2(a)). Ashe's Complaint does not allege that he was discriminated against based on his race, color, religion, sex, or national origin. Rather, he alleges that he was discriminated against because of his whistleblower disclosures.

Although Title VII has an anti-retaliation provision, it only serves to "prevent[ ] an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 63, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)) (citing 42 U.S.C. § 2000e–3(a)). In other words, Title VII's anti-retaliation provision prohibits an employer from taking an adverse action against an employee because of that employee's attempt to pursue a claim of discrimination based on his race, color, religion, sex, or national origin. *See id.* ("In order to establish a prima facie Title VII retaliation claim, a plaintiff must demonstrate three elements: '(1) that [he] engaged in a protected activity, as well as (2) that [his] employer took an adverse employment action against [him], and (3) that there was a causal link between the two events.'"). Accordingly, retaliation for whistleblower disclosures related to requests to fabricate reports and contract fraud, as is alleged here, does not amount to a claim under Title VII. Accordingly, Ashe's Title VII claim will be dismissed under Rule 12(b)(6).

With respect to Ashe's claims under the WPA, Ashe has failed to exhaust his administrative remedies.

"The WPA provides most federal agency employees with protection against agency reprisals for whistleblowing activity, such as disclosing illegal conduct, gross mismanagement, gross wasting of funds, or actions presenting substantial dangers to health and safety." *Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002) (citing 5 U.S.C. § 2302(b)(8)). The WPA's protections for whistleblowers are within the framework of the Civil Service Reform Act ("CSRA"). *See Heard v. U.S. Dep't of State*, 2010 WL 3700184, at *6, n. 7 (D.D.C. Sept. 17, 2010). *See also Hall v. Clinton,* 235 F.3d 202, 204 (4th Cir.2000) ("The CSRA comprehensively overhauled the civil service system, creating a framework for evaluating adverse personnel actions against federal employees."). "Under the procedures set forth in Title 5 of the U.S. Code, an employee who believes [he] is the victim of an unlawful reprisal must first bring [his] claim to the OSC, which investigates the complaint." *Stella*, 284 F.3d at 142 (citing 5 U.S.C. § 1214; *Weber v. United States,* 209 F.3d 756, 757–58 (D.C.Cir.2000)). "If the OSC finds an absence of wrongdoing, the employee can appeal that decision to the [MSPB]." *Id. See also* 5 U.S.C. §§ 1221; 1214(a)(3); *Weber*, 209 F.3d at 758; 5 U.S.C. § 7701 ("An employee, or applicant for employment, may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation.").

"[F]or claims brought pursuant to the WPA, 'exhaustion of administrative remedies is a . . . prerequisite to suit.'" *Heard v. U.S. Dep't of State*, 2010 WL 3700184, at *6 (D.D.C. Sept. 17, 2010) (quoting *Weaver v. United States Information Agency*, 87 F.3d 1429, 1433 (D.C.Cir.1996)). Moreover, the CSRA precludes judicial review of personnel actions other than as provided for by statute. *See United States v. Fausto,* 484 U.S. 439, 445-49 (1988). Accordingly, where a plaintiff fails to exhaust his administrative remedies, "[c]laims under the

WPA must be dismissed." *Floyd v. U.S. Dep't of Homeland Sec.*, 2009 WL 3614830, at *3 (D. Md. Oct. 27, 2009).

Here, Ashe brought his claims to the OSC and then appealed to the MSPB. 5 U.S.C. § 7701, *et seq*. provides two avenues for judicial review of WPA claims brought to the MSPB. Section 7703 governs judicial review of decisions of the MSPB related to actions which do not involve *any* claim of discrimination, *see* 5 U.S.C. § 7703, while § 7702 governs judicial review of actions brought to the MSPB which include a claim of discrimination under a set of enumerated statutes. *See* 5 U.S.C. § 7702.[7] In other words, the procedures detailed in § 7702 apply to all of an employee's MSPB claims (even those that do not implicate discrimination) if *any* of the employee's claims implicate one of the enumerated types of discrimination. *See Kloeckner v. Solis*, 568 U.S. 41, 44 (2012) (holding that "[w]hen an employee complains of a personnel action serious enough to appeal to the MSPB and alleges that the action was based on discrimination, she is said (by pertinent regulation) to have brought a 'mixed case'" and that such cases are governed by "special procedures . . . different from those used when the employee [] challenges a serious personnel action under the CSRA alone"); *Bonds v. Leavitt*, 629 F.3d 369, 379 (4th Cir. 2011) (holding that § 7702 governs "mixed case complaints"). Otherwise, the procedures set out in § 7703 apply.

---

[7] Specifically, § 7702 regulates "the case of any employee or applicant for employment who . . . alleges that a basis for the action was discrimination prohibited by—

    (i) section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16),
    (ii) section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d)),
    (iii) section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791),
    (iv) sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), or
    (v) any rule, regulation, or policy directive prescribed under any provision of law described in clauses (i) through (iv) of this subparagraph."

Here, as discussed above, neither Ashe's MSPB claim nor his present Complaint assert a claim of discrimination under Title VII or any of the other anti-discrimination statutes listed in § 7702. Therefore, his MSPB appeal is not a mixed appeal, and 5 U.S.C. § 7702 is not applicable. Accordingly, 5 U.S.C. § 7703 governs his Complaint.[8]

Section 7703 does not permit judicial review until after the MSPB issues its decision.[9] 5 U.S.C.A. § 7703(b)(1)(A) ("[A]ny petition for review shall be filed within 60 days after the [MSPB] issues notice of the final order or decision of the Board."). *Cf. Harris v. Evans*, 66 F. App'x 465, 466 (4th Cir. 2003) ("Judicial review of a WPA claim occurs only after the [MSPB] has issued a final decision on the claim."). Here, as Ashe concedes, "[n]o judicially reviewable action [has been] issued by the MSPB." Accordingly, because his claims have not yet been resolved by the MSPB, Ashe has not exhausted his administrative remedies, and his WPA claims must be dismissed for lack of subject matter jurisdiction. *See Harris*, 66 F. App'x at 466 ("Dismissal of a claim is appropriate when a plaintiff fails to exhaust his or her administrative remedies."). *See also McKinney v. Reich*, 1996 WL 498187, at *4 (S.D.W. Va. Mar. 25, 1996), *aff'd sub nom. McKinney v. U.S. Dep't of Labor*, 208 F.3d 209 (4th Cir. 2000).

Moreover, because § 7703, not § 7702, applies, the Court lacks subject matter jurisdiction over Ashe's WPA claims because he has filed his Complaint in the wrong court. "[A] petition to review a final order or final decision of the Board shall be filed in the United States Court of

---

[8] Ashe suggests that because he alleges violations of both the WPA and Title VII, he has filed a "mixed case complaint", and 5 U.S.C. § 7702(e)(1)(A) applies. He also insinuates that whistleblowing is a protected activity and retaliation for whistleblowing is defined as discrimination under Title VII. Both of these arguments are unpersuasive. *See Kloeckner v. Solis,* 568 U.S. 41, 44 (2012); *DeMasters v. Carilion Clinic*, 796 F.3d 409, 416 (4th Cir. 2015).

[9] This is in contrast to § 7702, which entitles the employee to file a civil action "if at any time after the 120th day following the filing of [the] matter . . . with an agency, there is no judicially reviewable action." *See* 5 U.S.C. § 7702(e)(1)(A).

10

Appeals for the Federal Circuit" 5 U.S.C.A. § 7703.[10] *See Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002) ("Under no circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance."); *Peterik v. United States*, 2017 WL 1102617, at *3 (E.D.N.C. Mar. 24, 2017) ("In such instance, judicial review is available only in the Court of Appeals for the Federal Circuit after the employee obtains a final decision from the MSPB."). Accordingly, Ashe has filed his petition for judicial review in the wrong court, and the Court lacks subject matter jurisdiction over his claims.

With regard to Ashe's failure to exhaust, Ashe could amend his Complaint once the MSPB issues a decision. However, because Ashe has filed his Complaint in the wrong court, even if he amends his Complaint, the Court would still lack subject matter jurisdiction. In other words, the latter deficiency cannot be resolved through the filing of an amended complaint. Accordingly, his Complaint is dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 15) is **GRANTED** and Ashe's Motion for Summary Judgment (ECF No. 11) is **DENIED**. The Court **DISMISSES** Ashe's Complaint (ECF No. 1) **WITH PREJUDICE**, as set forth in the accompanying Order.[11]



                                                /s/
                                           **PETER J. MESSITTE**
                                 **UNITED STATES DISTRICT JUDGE**

**July 26, 2017**

---

[10] This is in contrast to § 7702, which entitles the employee "to file a civil action" to the same extent and in the same manner as provided in section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), or section 16(b) of the Fair Labor Standards Act of 1938 (29 U.S.C. 216(b))," all of which permit the filing of a complaint in district court. *See* 5 U.S.C. § 7702(e)(1).

[11] This ruling, of course, has no effect on any of Ashe's proceedings before the MSPB or any potential future proceedings before the United States Court of Appeals for the Federal Circuit.